**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

THE VLADIMIR GUSINSKY REVOCABLE
TRUST derivatively on behalf of CUMMINS,
INC.,

     Plaintiff,

     v.

CUMMINS, INC. Nominal Defendant,
NORMAN T. LINEBARGER,
JENNIFER RUMSEY,
GARY L. BELSKE,
ROBERT J. BERNHARD,
BRUNO V. DiLEO,
STEPHEN B. DOBBS,
DANIEL W. FISHER,
CARLA A. HARRIS,
THOMAS J. LYNCH,
WILLIAM I. MILLER,
GEORGIA R. NELSON,
KIMBERLY A. NELSON,
ALEXIS M. HERMAN,
KAREN H. QUINTOS,

     Defendants.

     No. 1:24-cv-00128-TWP-MKK

JOSHUA INGERSOLL Derivatively on behalf of
CUMMINS, INC., Consolidated from 1:24-cv-
1073,
OKLAHOMA FIREFIGHTERS PENSION AND
RETIREMENT SYSTEM Derivatively on behalf
of Cummins, Inc., 1:25-cv-01792-TWP-MKK,
CITY OF SOUTHGATE POLICE AND FIRE
RETIREMENT SYSTEM Derivatively on behalf
of Cummins, Inc., 1:25-cv-01792-TWP-MKK,

     Consol Plaintiffs,

     v.

MARK A SMITH Consolidated from 1:24-cv-1073,                             )
FRANKLIN R. CHANG DIAZ Consolidated from 1:24-cv-1073,                    )
ROBERT K. HERDMAN Consolidated from 1:24-cv-1073,                        )
                                                                          )
                              Consol Defendants.                          )

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6) by Defendants, who are former or current officers and directors of nominal defendant Cummins, Inc. ("Cummins")[1] ([Filing No. 87]). In December 2023, Cummins announced that it would pay over two billion dollars to settle claims that it had violated federal and state diesel emissions laws. Thereafter, Cummins stock price fell precipitously, and this shareholder derivative action followed. Four shareholders—Joshua Ingersoll, the Oklahoma Firefighters Pension and Retirement System, the City of Southgate Police and Fire Retirement System, and the Vladimir Gusinsky Revocable Trust (collectively, "Plaintiffs")—assert federal claims under Section 14(a) of the Securities Exchange Act of 1934 (the "Securities Act") and state law claims for breach of fiduciary duty. For the reasons discussed below, the Court **grants** the Motion to Dismiss **without prejudice** as to Plaintiffs' federal claims, and grants leave to file an amended complaint. And as explained in this Order, if the federal claims are not successfully repleaded, the Court intends to **relinquish jurisdiction** over the state law claims.

## I.    BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Plaintiffs as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d

---

[1] "Cummins" refers to nominal defendant Cummins, Inc. "Defendants" refers to the fourteen individual defendants.

632, 633 (7th Cir. 2008). These facts are not intended to provide a comprehensive explanation of all the facts in this case; rather, it provides the background relevant to the issues before the Court.

Cummins is an Indiana-based multinational company that manufactures diesel engines that are used in many top-selling trucks in the United States, including RAM and Nissan pickup trucks (*Okla. Firefighters Pension & Ret. Sys. v. Belske*, No. 1:25-cv-01792, Dkt. 1 ¶¶ 2, 38–42).[2] All engines sold in the United States are subject to emissions standards under the Clean Air Act and contain emissions control systems intended to limit a vehicle's emissions during regular use. *Id.* ¶ 2, 43. Companies sometimes attempt to evade these emissions requirements by equipping vehicles with "defeat devices" which are devices designed to activate the emissions control systems only during vehicle testing and "defeat" the control systems during regular use, allowing vehicles to produce impermissible levels of emissions. *Id.* ¶ 45. The Clean Air Act prohibits the use of defeat devices. *Id.* (quoting 42 U.S.C. §§ 85, 7522(a)(3)(B)). To ensure compliance with the Clean Air Act and other similar regulations, the Environmental Protection Agency ("EPA") requires manufacturers, including Cummins, to obtain certificates that disclose all emissions control devices installed in vehicles, provide information about the parameters and justifications for those devices, and explain why they are not defeat devices. *Id.* ¶¶ 46–48.

The EPA has enforced the prohibition on defeat devices against several major manufacturers, resulting in fines, recalls, and modifications affecting millions of vehicles. Cummins is no exception. In 1998, Cummins and six other manufacturers entered into a settlement and consent decree (the "Consent Decree") with the EPA and Department of Justice ("DOJ"), which entailed millions of dollars in fines, a commitment to spend over one billion dollars to resolve the claims, and a promise not to violate the Clean Air Act in the future. *Id.* ¶¶ 53–54.

---

[2] The operative Complaint was filed in a separate action, *Okla. Firefighters Pension & Ret. Sys. v. Belske*, No. 1:25-cv-01792-TWP-MKK (S.D. Ind. Sept. 9, 2025), and has not been re-docketed in this action.

Cummins disclosed the Consent Decree to shareholders in March 1999 in an annual report. That report stated that Cummins had "developed extensive corporate action plans to comply with all aspects of the Consent Decree." *Id.* ¶ 55. According to the Consolidated Complaint, this was untrue. Cummins had not developed any such action plans and did not have any internal controls to oversee compliance with the Consent Decree. *Id.* ¶ 57.

Cummins admitted to violating the Consent Decree in September 2006, October 2006, and February 2010, resulting in more fines and remedial measures. *Id.* ¶¶ 4, 58–63. Between 2010 and 2019, Cummins promoted its compliance with clean air regulations, despite allegedly continuing to install defeat devices and failing to establish reporting or control systems to monitor compliance with those regulations. But the Board meeting minutes for those years make no mention of any discussion regarding regulatory compliance or any reports from Cummins' Audit Committee or Safety, Environment, and Technology Committee on compliance. *Id.* ¶¶ 64–69.

In September 2015, the EPA announced that Volkswagen had been using defeat devices. *Id.* ¶ 70. That same month, the California Air Resources Board ("CARB") issued a letter to all engine manufacturers warning that defeat devices were prohibited by California law and that the CARB would begin implementing new, additional emissions tests. *Id.* ¶ 71. In October 2015, Cummins management provided a report to the Board on "the Volkswagen situation." *Id.* ¶ 72. Despite this report, the Board did not investigate whether Cummins was installing defeat devices or implementing any systems to ensure Cummins' compliance with environmental laws. *Id.*

In November 2015, Volkswagen was again found to have violated clean air laws; in January 2017, Volkswagen pled guilty to criminal charges; and in April 2017, a federal court ordered Volkswagen to pay a $2.8 billion criminal fine. *Id.* ¶¶ 73–78. Around that same time, Cummins was named in a consumer class action lawsuit regarding excess nitrogen oxide emissions from

4

diesel engines in certain model year 2007–2012 RAM trucks. *Id.* ¶ 75. But despite all of this news, Cummins' Board failed to assess Cummins' potential exposure to liability. *Id.* ¶¶ 73–74. The Board meeting minutes for 2016 and 2017, like the minutes for prior years, do not reflect any discussion of Cummins' compliance with clean air laws or any presentation by the Audit Committee or Safety, Environment, and Technology Committee on regulatory compliance. *Id.* ¶¶ 75–78.

In 2018, the EPA discovered defeat devices in model year 2019 RAM trucks with Cummins engines, and a subsequent EPA investigation uncovered defeat devices in several other RAM trucks for model years 2013–2019. *Id.* ¶ 80. The minutes for the Board's February 2018 meeting reflect, for the first time, that several of Cummins' officers provided an update to the Board regarding "EPA issues." *Id.* ¶ 81. However, the minutes do not reflect any action by the Board to investigate or oversee Cummins' compliance with environmental laws. *Id.* Instead, the Board continued to "passively receive reports" throughout the rest of 2018. *Id.*

In the following years, the EPA continued to enforce the Clean Air Act's prohibition on defeat devices by levying large fines against manufacturers, including Fiat Chrysler and Daimler (the parent of Mercedes-Benz). *Id.* ¶¶ 82–83, 97–98. CARB also sent a second letter to manufacturers, including Cummins, reminding them of the September 2015 letter and calling for emissions law compliance. *Id.* ¶ 100. Yet Cummins' Board never discussed the recent fines, the CARB letter, or Cummins' compliance with environmental laws. *Id.* ¶¶ 84–85, 00, 101.

Between 2019 and 2022, Cummins issued press releases and federal financial reports stating that, following conversations with the EPA and CARB, it was formally reviewing its emissions certification process and compliance with emissions standards for its pickup trucks. Some of the filings mentioned that the formal review could affect Cummins' financial condition, but none of them mentioned that the EPA had found defeat devices in model year 2019 RAM

5

vehicles. *Id.* ¶¶ 85–89, 91–93, 102, 104. Later filings by Cummins failed to disclose that model year 2019–2023 RAM vehicles continued to use defeat devices that violated the Clean Air Act. *Id.* ¶¶ 108–11, 114–15. The Board meeting minutes for those years reflect that the Board received reports about "EPA issues" but took no action to investigate or oversee Cummins' compliance with environmental laws. *Id.* ¶¶ 90, 103, 105–06, 112. On a few occasions, the Board held a special meeting or heard a presentation from Cummins' General Counsel, but the minutes do not reflect whether these meetings or presentations related to Clean Air Act compliance. *Id.* ¶¶ 94–96, 99.

Plaintiffs identify two Proxy Statements—filed in March 2022 (the "2022 Proxy Statement") and March 2023 (the "2023 Proxy Statement")—as false or misleading. Both Proxy Statements solicited shareholder votes to re-elect incumbent directors for one year and to reject a proposal to separate the roles of Board Chair and CEO. *Id.* ¶¶ 127, 136. Both Proxy Statements incorporate by reference Cummins' annual report from the immediately preceding years. Plaintiffs allege that the incorporated annual reports and the Proxy Statements themselves contain misleading statements about the Board's ability to ensure compliance with emissions laws, the Board's oversight of Cummins' risk management and governance issues, and "a new calibration for the engines in model year 2019 RAM 2500 and 3500 trucks" based on "discussion with the regulators." *Id.* ¶¶ 128–34, 137–45. Plaintiffs allege that these statements are misleading because they fail to disclose that Cummins was continuing to use defeat devices, omit disclosure of the then-ongoing EPA investigation, and create the false impression that Cummins' corporate governance structure was adequate to prevent violations of emissions laws. *Id.*

In December 2023, the Board held a special meeting at which it authorized Cummins to enter into an agreement with the DOJ, CARB, and California Attorney General to resolve civil claims related to the alleged use of defeat devices. *Id.* ¶116. A few days later, Cummins filed a

financial report announcing that it would record a charge of roughly $2.04 billion in connection with the settlement. *Id.* ¶ 117. Following this announcement, Cummins' stock price fell three percent, representing a loss of almost one billion dollars in shareholder value. *Id.* ¶ 121. As another term of the settlement, Cummins recalled over six hundred thousand RAM trucks for repair and replacement of the engine control software, costing an estimated $325 million. Cummins also agreed to extend the warranty period for certain parts in the affected RAM trucks, to pay for and perform projects to mitigate excess nitrogen oxide emitted from the trucks, and employ new internal procedures designed to prevent future emissions cheating. *Id.* ¶ 12.

This instant lawsuit was initiated in January 2024 by the Vladimir Gusinsky Revocable Trust (Filing No. 1). It was then consolidated with two later-filed actions: one filed in June 2024 by Joshua Ingersoll, *Ingersoll v. Linebarger*, No. 1:24-cv-01073-TWP-MKK (S.D. Ind. June 24, 2024) ("*Ingersoll*"); and one filed in September 2025 by the Oklahoma Firefighters Pension and Retirement System and the City of Southgate Police and Fire Retirement System, *Oklahoma Firefighters Pension and Retirement System v. Belske*, No. 1:25-cv-01792-TWP-MKK (S.D. Ind. Sept. 9, 2025) ("*Oklahoma Firefighters*"). The Vladimir Gusinsky Revocable Trust is a shareholder of Cummins and has continuously held Cummins common stock since July 11, 2000. (Filing No. 1 at 2), the Oklahoma Firefighters has owned Cummins common stock since December 2012, and the City of Southgate Police and Fire Retirement System has owned stock since December 2018. On the parties' joint request, the Court consolidated these actions and deemed the *Oklahoma Firefighters* complaint to be the operative complaint (the "Consolidated Complaint") (Filing No. 53; *Okla. Firefighters*, Dkt. 1).

In the Consolidated Complaint, Plaintiffs assert two counts: Count I, violations of Section 14(a) of the Securities Act; and Count II, breach of fiduciary duty. Defendants move to dismiss

both claims pursuant to Rules 23.1 and 12(b)(6) and Indiana Code § 23-1-32-2, arguing that Plaintiffs failed to make a pre-litigation demand to Cummins' Board as required by Indiana law. Defendants' Motion to Dismiss is now ripe for the Court's review.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation modified). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In a derivative action, the complaint must be verified and plead certain allegations with specificity. *See* Fed. R. Civ. P. 23.1. The complaint must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of" and "that the action is not a collusive one to confer jurisdiction that the court would otherwise lack." *Id.* The complaint must also "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . and the reasons for not obtaining the action or not making the effort." *Id.* (b)(3). In addition, a plaintiff must "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." *Id.* (a).

## III.    DISCUSSION

Defendants argue that Plaintiffs' claims should be dismissed because Plaintiffs admittedly did not make a pre-suit demand on the Board, and Plaintiffs fail to show that such a demand would have been futile. Accordingly, the Court will discuss pre-suit demands and demand futility under Indiana law before addressing Plaintiffs' federal and state law claims in turn.

### A.    Pre-Suit Demand and Demand Futility

Under Indiana law, a plaintiff in a shareholder derivative suit must satisfy certain threshold requirements for his claim to be considered. A plaintiff must show: (1) that he was a shareholder at the time of the transaction of which he complains; (2) that he made efforts to obtain the requested action from the board of directors or why he did not make a demand on the board; and (3) that he fairly and adequately represents the interests of the shareholders as a whole. Ind. Code § 23-1-32-1; Ind. Trial Rule 23.1. The "demand" requirement reflects the law's deference to the decisions made by a corporation's directors, as embodied in the business judgment rule. *See G & N Aircraft v. Boehm*, 743 N.E.2d 227, 238 (Ind. 2001) (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). Indiana has adopted a "strongly pro-management" version of the business judgment rule, *see id.*, expressing its policy that "the decision whether and to what extent to investigate and

9

prosecute corporate claims . . . should in most instances be subject to the judgment and control of the board." Ind. Code § 23-1-32-4(b). A plaintiff can ordinarily overcome the presumption in favor of the validity of board judgment only by pleading with particularity that the decision makers were compromised by conflicts of interests, or that the decision was so deficient as to constitute "recklessness or willful misconduct." *In re ITT Derivative Litig.*, 932 N.E.2d 664, 670 (Ind. 2010); *see also Carter ex rel. CNO Fin. Grp., Inc. v. Hilliard*, 970 N.E.2d 735, 748 (Ind. Ct. App. 2012).

Where a plaintiff initiates a derivative suit without making a demand, he must show that demand would have been futile. Ind. Code § 23-1-32-1. In setting the standard for futility, Indiana looks to the well-developed body of Delaware corporate law. *See In re ITT*, 932 N.E.2d at 668. Citing Delaware law, the Indiana Supreme Court has held that to excuse a pre-suit demand, "the particularized factual allegations [must] create a reasonable doubt that the board could have properly exercised disinterested business judgment in responding to a demand. A director is 'interested' for demand futility purposes if a derivative claim poses a significant risk of personal liability for the director." *Id.* (internal citation omitted) (citing *Rales v. Blasband*, 634 A.2d 927 (Del. 1993)). Specifically, "there must be 'a substantial likelihood' of liability for the director." *Id.* Here, the parties dispute whether Defendants face a substantial likelihood of personal liability for Plaintiffs' federal and state law claims.[3]

**B.    Count I: Section 14(a) Claims**

Section 14(a) of the Securities Act "makes it unlawful to solicit a proxy from shareholders in violation of SEC rules and regulations, and Rule 14a-9 bars proxy statements that are false and misleading with respect to a material fact or that omit material facts necessary to make the

---

[3] In discussing demand futility under Indiana law, this court has previously utilized the two-prong test developed by Delaware courts in *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) and its progeny. *E.g.*, *In re Biglari Holdings, Inc. S'holder Derivative Litig.*, 93 F. Supp. 3d 936, 947 n.5 (S.D. Ind. 2015) (incorporating question of personal liability into the second prong of the *Aronson* test). Neither side engages with the *Aronson* framework in this case.

statements not false or misleading." *Smykla v. Molinaroli*, 85 F.4th 1228, 1235 (7th Cir. 2023) (internal citations omitted) (citing 15 U.S.C. § 78n; 17 C.F.R. § 240.14a-9). To state a claim under Section 14(a), a plaintiff must show: "(i) that the proxy statement contained a material misstatement or omission that (ii) caused the plaintiff's injury, and (iii) that the proxy solicitation was an essential link in accomplishing the transaction." *Kuebler v. Vectren Corp.*, 13 F.4th 631, 637 (7th Cir. 2021).

Defendants argue that Plaintiffs' Section 14(a) claims present no substantial likelihood of personal liability against Defendants because: (1) Plaintiffs fail to adequately allege reckless or willful misconduct by Defendants as required for personal liability under Indiana law; (2) the Section 14(a) claims are time-barred; (3) Plaintiffs fail to adequately plead causation; and (4) the Proxy Statements are not false or misleading. Each argument is addressed in turn.

### 1. **Allegations of Mental State**

The parties dispute what mental state is required to establish personal liability against individual directors under Section 14(a). Plaintiffs argue that Section 14(a) does not require a mental state, so their allegations of mere negligence suffice (Filing No. 94 at 25–26). Defendants argue that under Indiana law, Plaintiffs are required to show reckless or willful misconduct to establish personal liability for any claims, including Section 14(a) claims (Filing No. 88 at 26–27). Defendants rely on Indiana Code § 23-1-35-1(e)(2), which states:

> (e) A director is not liable for any action taken as a director, or any failure to take any action, regardless of the nature of the alleged breach of duty, including alleged breaches of the duty of care, the duty of loyalty, and the duty of good faith, unless:
> . . .
>
> > (2) the breach or failure to perform constitutes willful misconduct or recklessness.

In arguing that willful or reckless conduct is needed to establish personal liability under Section 14(a), Defendants cite *In re Kraft Heinz Shareholder Litigation*, No. 20 C 2259, 2023 WL

11

2745118, at *9 (N.D. Ill. Mar. 31, 2023). In that case, the court held that the plaintiffs were required to plead more than negligence to establish demand futility for their Section 14(a) claims (Filing No. 97 at 8). However, that holding was not based on the applicable state's (Delaware's) business judgment rule, or any codification thereof. The court's holding was instead based on an exculpatory provision of the company's certificate of incorporation. *Id.* ("[T]he claim does not threaten the director defendants with a substantial likelihood of liability because it is not the kind of claim that *exceeds the protection of the exculpatory provision*." (emphasis added); citing Del. Code tit. 8, § 102(b)(7) (permitting certificates of incorporation to include provisions eliminating or limiting personal liability); *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1054 (Del. 2021) ("Where a corporation's charter contains a Section 102(b)(7) provision, a plaintiff seeking only monetary damages must plead non-exculpated claims against a director who is protected by an exculpatory charter provision to survive a motion to dismiss, regardless of the underlying standard of review for the board's conduct." (citation modified))). Defendants do not point to any similar exculpatory provision in Cummins' governing documents, so *In re Kraft Heinz* is inapplicable.

Defendants also argue that Indiana law governs the standard for demand futility, and Indiana Code § 23-1-35-1(e)(2) limits personal liability "'for *any* action taken'" as a director (Filing No. 97 at 7 (quoting Ind. Code § 23-1-35-1(e)(2)) (emphasis in original)). Defendants offer policy arguments as to why this statute should apply to Section 14(a) claims against individual directors (Filing No. 97 at 8) but cite no authority showing that it does apply. To the contrary, the language and commentary of the statute indicate that its application is limited to claims for breaches of state law duties. Ind. Code § 23-1-35-1(e)(1) ("A director is not liable . . . regardless of the nature of the *alleged breach of duty* . . . unless: (1) the director has *breached or failed to perform the duties* . . .

in compliance with this section; and (2) *the breach or failure to perform* constitutes willful misconduct or recklessness." (emphases added)); *id.* at Official Comments to Subsection (e) ("Subsection (e) was intended to make it clear that . . . the exculpation afforded to directors under subsection (e) *applies to alleged breaches of the duty of care, the duty of loyalty and the duty of good faith* and is not to be construed to apply only to the duty of care. (emphasis added)); *see also In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1082 (6th Cir. 1984) ("We take profound note of the reality that this federal policy is often frustrated by the application of a state's business judgment rule. . . . Indeed § 14(a) would become a nullity if a defendant-director in a derivative action alleging failure to supply adequate information in a proxy solicitation were permitted to dismiss the action on the basis of his own business judgment.").

In other contexts, courts have explained that state laws do not apply to federal claims. *See, e.g.*, *Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of . . . a federal cause of action are defined by federal law."); *Watson v. Cnty. of Santa Clara*, No. C-06-04029, 2007 WL 2471399, at *9 (N.D. Cal. Aug. 27, 2007) (finding, for claims under 42 U.S.C. § 1983, "a state statute cannot immunize an entity or an individual from violations of federal law"); *Cantroll v. Morris*, 849 N.E.2d 488, 506 (Ind. 2006) (holding that the Indiana Tort Claims Act does not apply to 42 U.S.C. § 1983 claims); *see also Ambrose v. Coffey*, No. Civ. S-08-1664, 2008 WL 11389033, at *4 (E.D. Cal. Nov. 13, 2008) ("Because plaintiff raises no state law claims, this state law defense does not apply . . . ."); *Taylor v. Tolbert*, 644 S.W.3d 637, 653 (Tex. 2022) ("We conclude that attorney immunity . . . under Texas law, is not a defense under the federal wiretap statute because, quite simply, a state's common-law defense does not apply to federal statutes.").

While Defendants are correct that Indiana law governs the standard for demand futility, which requires a substantial likelihood of personal liability, Defendants have not shown that

13

Indiana law governs the standard for personal liability under Section 14(a). Under Seventh Circuit precedent, "there is no required state of mind for a violation of section 14(a)." *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) (citation modified). "Section 14(a) requires proof only that the proxy solicitation was misleading, implying at worst negligence by the issuer. And negligence is not a state of mind; it is a failure. . . to come up to the specified standard of care." *Id.* Plaintiffs allege that the Proxy Statements contained materially misleading statements or omissions and that Defendants issued, or caused Cummins to issue, the Proxy Statements. That is enough. Defendants' motion to dismiss Count I for failure to adequately plead the requisite mental state is **denied**.

### 2.  Statute of Limitations and Statute of Repose

Defendants next argue that Plaintiffs' Section 14(a) claims should be dismissed as untimely because the operative Consolidated Complaint, which was filed in September 2025 in *Oklahoma Firefighters*, was filed beyond the applicable statute of limitations for claims arising from either Proxy Statement, and beyond the applicable statute of repose for claims arising from the 2022 Proxy Statement (Filing No. 88 at 17–18). Defendants assert that Section 14(a) claims are subject to a one-year period of limitations and three-year period of repose, which Plaintiffs do not dispute. [4]

---

[4] Section 14(a) creates only an implied cause of action and does not contain a period of limitations or repose. *See Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 2d Cir. 2016) ("Because the private right of action in Section 14(a) is implied and not express, it is no surprise that a statute of repose is not to be found in its text."). Section 13 of the Securities Act, 15 U.S.C. § 77m, provides a one-year limitations period and three-year period of repose for certain claims, but not Section 14(a) claims. Defendants cite a 1997 case in which the Seventh Circuit applied Section 13 to securities fraud claims but not Section 14(a) claims. *Law v. Medco Rsch., Inc.*, 113 F.3d 781 (7th Cir. 1997). Defendants also cite a District of New Jersey decision discussing whether the Sarbanes-Oxley Act of 2002, 28 U.S.C. § 1658—which bars claims after the earlier of "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation"—applied to the claims pre-dating Sarbanes-Oxley. *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 418 (D.N.J. 2005); *see Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 541–41 (7th Cir. 2005) (discussing effect of Sarbanes-Oxley on statutes of limitations for securities claims); *In re Alta Mesa Res., Inc. Sec. Litig.*, 676 F. Supp. 3d 485, 493 (S.D. Tex. 2023) ("[T]he Court cannot conclude, based on the pleadings alone, that the . . . plaintiffs are not entitled to apply the repose period of Section 1658 to their claims under Section[] 14(a) . . . ."). All this to say, Defendants fail to identify the statute from which is "borrows" the proffered periods of limitations and repose and fail to show that this Court must (based on binding authority) or should (absent binding authority) apply those periods to Section 14(a) claims. However, because Plaintiffs do not contest this issue, the Court assumes—without deciding—that the proffered one-year and three-year periods apply.

Plaintiffs respond that their Section 14(a) claims are timely because they relate back to the June 2024 *Ingersoll* complaint and because their claims did not accrue until Cummins announced the $2.04 billion settlement in December 2023 (Filing No. 94 at 19–20). Plaintiffs reason that because the *Ingersoll* complaint was filed within three years of the Proxy Statements' publications, and because the *Ingersoll* complaint was filed within one year of December 2023 settlement announcement, their claims are not time-barred. The Court agrees with Plaintiffs, at least at this stage and based on the instant briefing.

To start, the Court finds that the Consolidated Complaint relates back to the *Ingersoll* complaint under Federal Rule of Civil Procedure 15.[5] Under Rule 15(c)(1), "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." (emphasis added). On their faces, the Consolidated Complaint and *Ingersoll* complaint arise out of the same conduct, transaction, or occurrence. In opposing relation back, Defendants argue, "[t]he *Ingersoll* Complaint alleged that the Proxy Statements were false or misleading because each 'overstated' Cummins' 'commitment to environment protection'" (Filing No. 97 at 10 (quoting *Ingersoll* Dkt. 1 ¶¶ 78, 86, 89, 104, 119)), whereas "[t]his case challenges entirely different statements concerning Cummins' 'legal and regulatory compliance,'" *id* (quoting Filing No. 1 ¶¶ 132, 141, 180). This argument patently misstates the *Ingersoll* complaint, which alleges the Proxy Statements "misrepresented and failed to disclose vital and adverse facts about the Company's *violations of emissions standards* . . . . as such, Cummins was *understating its legal and regulatory risk*, and overstating its commitment to environmental

---

[5] Neither party raises the issue of whether Rule 15 permits a complaint filed in one case to relate back to a complaint filed in a separate case, even if they are later consolidated. *See Bailey v. N. Ind. Pub. Serv. Co.*, 910 F.2d 406, 413 n.9 (7th Cir. 1990). Accordingly, the Court assumes—without deciding—that Rule 15 permits such a relation back.

protection . . . [and] the Individual Defendants' statements regarding Cummins' *violations of emissions standards* and resulting business prospects were materially false and misleading." (*Ingersoll* Dkt. 1 ¶ 89 (emphases added); *see id.* ¶ 119 ("Cummins was understating its legal and regulatory risk . . . ."). The Consolidated Complaint relates back to the *Ingersoll* complaint 15.

The next question for purposes of the statute of limitations is whether Plaintiffs' Section 14(a) claims accrued when Cummins announced its settlement in December 2023. Defendants argue that the settlement did not provide Plaintiffs with any new information about Cummins' "emissions issues," so their claims must have accrued earlier (Filing No. 88 at 18–19). Plaintiffs respond that their claims did not accrue until December 2023 because due to the "brazen" nature of Defendants' misconduct, Plaintiffs could not have realized that the Proxy Statements were materially false or misleading until Cummins announced not only that it had agreed to settle emissions claims, but also that the settlement would entail an historic $2.04 billion penalty.

In addressing this issue, the Court remains mindful that "a plaintiff is not required to negate an affirmative defense, such as the statute of limitations, in his complaint." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). At the pleading stage, "the question is only whether there is *any* set of facts that if proven would establish a defense to the statute of limitations." *Id.* 768 (emphasis in original); *see Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (explaining that a complaint may be dismissed under Rule 12(b)(6) or 12(c) if the complaint's allegations raise an "airtight" or "impenetrable" defense "to what would otherwise be a good claim"). "Though a plaintiff can plead himself out of court if he alleges facts that affirmatively show that his suit is time-barred, that is not what we have here." *Clark*, 318 F.3d at 767 (citation modified). Plaintiffs have not gone so far as to plead themselves out of court. Dismissal at this preliminary stage based on the statute of limitations would be premature.

16

The statute of repose, like the statute of limitations, is an affirmative defense that need not be anticipated by a complaint and must be proven by Defendants. *See Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005). Defendants argue that the Section 14(a) claims arising from the 2022 Proxy Statement are barred by the statute of repose.[6] Plaintiffs concede that the Consolidated Complaint was filed more than three years after the 2022 Proxy Statement but argue that the Consolidated Complaint relates back to the *Ingersoll* complaint, so their claims are not barred. On reply, Defendants argue that the relation back doctrine does not apply to statutes of repose (Filing No. 97 at 9). However, the caselaw cited in Defendants' reply does not persuade the Court that Rule 15 does not apply to the statute of repose for Section 14(a) claims. Defendants first cite a Supreme Court decision for the general premise that statutes of repose "supersede[] the application of a tolling rule based in equity." *Id.* (quoting *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 510 (2017)). But relation back is not an equitable principle; it is a federal rule. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553 (2010) ("Rule [15(c)(1)] mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion."). Defendants also cite a distinguishable decision from the Northern District of Illinois discussing relation back as applied to the statute of repose for Truth in Lending Act claims. *Harris v. OSI Fin. Servs., Inc.*, 595 F. Supp. 2d 885, 898 (N.D. Ill. 2009). Defendants lastly cite a decision in which the Southern District of New York held that the application of Rule 15 to the statute of repose for Section 10(b) fraud claims would violate the Rules Enabling Act. *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 380 (S.D.N.Y. 2013). However, Defendants do not argue that the Rules Enabling Act precludes the application of Rule 15 to Section 14(a) claims, and this single out-of-circuit decision is not binding on this Court.

---

[6] As noted *supra*, Defendants do not identify the statute providing the applicable period of repose.

Defendants' undeveloped discussion fails to persuade the Court that Rule 15 does not apply to the statute of repose for Section 14(a) claims. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived . . . ."); *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 408–09 (7th Cir. 1988) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.").

At this stage and based upon the briefs before the Court, the Court finds that the Consolidated Complaint relates back to the *Ingersoll* complaint, declines to dismiss Plaintiffs' Section 14(a) claims based on the statute of limitations, and declines to dismiss Plaintiffs' Section 14(a) claims arising from the 2022 Proxy Statement based on the statute of repose. Defendants' motion to dismiss the Section 14(a) claims as untimely is **denied**.

### 3. Causation

As stated previously, a claim under Section 14(a) requires a plaintiff to allege a material misstatement or omission and causation. *Kuebler*, 13 F.4th at 637. "Causation in securities law consists of two components: transaction causation and loss causation. Transaction causation, often called reliance, is generally easier to establish than loss causation." *Id.* Defendants argue that the Consolidated Complaint fails to adequately allege either type of causation.

Defendants argue that Plaintiffs fail to show transaction causation because the Consolidated Complaint does not permit a reasonable inference that Plaintiffs actually relied on the challenged misstatements (Filing No. 88 at 21–22). However, "[w]here materiality is alleged and proven, proof of reliance on the particular statement or omission is not necessary. The proxy solicitation itself serves as the causal link in the transaction—that the challenged violation(s) caused the plaintiff to engage in the challenged transaction"—namely, the re-election of directors. *Kuebler*, 13 F.4th at 637–38. Defendants do not contest the materiality of the challenged

statements, so the Proxy Solicitations themselves satisfy the transaction loss element of Plaintiffs' Section 14(a) claims. *Id.* at 638 (describing standard for materiality).

"The loss causation requirement . . . requires a plaintiff to allege and prove that the challenged misrepresentations or omissions caused her economic loss." *Id.* (affirming order granting motion to dismiss Section 14(a) claims for, in part, failure to plead loss causation). Defendants contend that Plaintiffs fail to adequately plead loss causation because the 2022 and 2023 proxy votes "have nothing to do with" the alleged corporate mismanagement (Filing No. 88 at 21). Defendants cite several cases in which courts have dismissed Section 14(a) claims based on proxies for board elections. *Id.* at 20–21.

Plaintiffs respond that loss causation is met because they allege that "had the Proxies been truthful, shareholders would not have re-elected the incumbent directors, preferring instead directors who would have worked to prevent or mitigate the harm to the Company." (Filing No. 94 at 26–27 (quotation marks and citations omitted)). Plaintiffs cite one out-of-circuit case in support, *Employees Retirement System of City of St. Louis v. Jones*, No. 20-cv-4813, 2021 WL 1890490 (S.D. Ohio May 11, 2021) ("*Jones*"), but *Jones* is in applicable. The court in that case found that the plaintiffs had adequately alleged a causal connection between misleading proxies for the board election and harm to the company. But the *Jones* court discussed only transaction causation. The movant-defendants did "not contest[] loss causation." 2021 WL 1890490, at *16 n.12. The *Jones* court's mention of an "essential link" to the plaintiffs' harm, cited in Plaintiffs' response, confirms that the *Jones* court was focusing on transaction causation. *Id.* at *14–15; *Kuebler*, 13 F.4th at 645 ("Plaintiffs argue that loss causation is alleged sufficiently where a materially deficient proxy statement was an essential link in the consummation of a transaction that the plaintiff alleges caused him financial harm. But that is the test for transaction causation.").

19

Even if *Jones* were applicable, its holding is vastly outweighed by contrary decisions from other courts, which have consistently "decline[d] to find causation based on re-election of board members and 'later misconduct undertaken by' them, [and have] instead requir[ed] shareholders to authorize a specific transaction that directly results in economic harm." *Jones*, 2021 WL 1890490, at *16. The *Jones* court itself acknowledged that those cases "represent a more common approach" to Section 14(a) claims like Plaintiffs' claims. *Id.*; *see, e.g.*, *Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 594 F.3d 783, 797 (11th Cir. 2010) ("[T]he damages suffered by the shareholders were caused not by the policies that they approved via proxy, but by management's failure to follow those policies. . . . [T]he insiders' decision to violate company policies was not accomplished or endorsed by any proxy solicitation materials. . . . [W]e affirm the dismissal of the proxy solicitation claims."); *Deangelis v. Hees*, No. 24-05687, 2025 WL 3712280, at *16 (D.N.J. Dec. 23, 2025) (dismissing Section 14(a) claims alleging that deficiencies in proxy statements "tainted shareholder votes"); *In re Danaher Corp. S'holder Derivative Litig.*, 549 F. Supp. 3d 59, 73–74 (D.D.C. 2021) ("The Shareholders' causation theory is as follows: the misleading proxy statements caused the election of the Directors, who then failed to nominate an African American director, which harmed the company because companies with less diverse boards are less profitable. . . . [T]he election itself did not harm the company—the Directors' failure to nominate an African American director did."); *In re AGNC Inv. Corp.*, No. 16-3215, 2018 WL 3239476, at *6 (D. Md. July 3, 2018) ("Transaction causation mandates that the challenged conduct that caused the economic loss be an action authorized by shareholder vote, not later misconduct undertaken by the Board."); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. Sept. 14, 2007) ("[P]laintiffs fail to allege any injury suffered as a result of the allegedly misleading proxy statements—that is, they allege no direct injury suffered by [the] corporation as a direct result of

the transaction that was at immediate issue in the proxy (election of directors)."); *In re Affiliated Comput. Servs. Derivative Litig.*, 540 F. Supp. 2d 695, 704 (N.D. Tex. 2007) (rejecting theory that proxy statements were an essential link in the "continuation" of defendants' alleged scheme); *Issen v. GSC Enters., Inc.*, 522 F. Supp. 390, 396 (N.D. Ill. 1981) (holding that "the election of GSC directors accomplished by the assertedly deficient proxies was not causally related to the loans to certain directors" that caused the loss).

Not all of the above-cited cases distinguish between loss causation and transaction causation the way the Seventh Circuit does. *E.g.*, *In re AGNC Inv. Corp.*, 2018 WL 3239476, \*3 (explaining that the Third and Eleventh Circuits have held that "transaction causation" requires a showing that the proxy statement included shareholders to directly authorize the specific transaction that resulted in the economic loss"). But all of them support the conclusion that in cases like this one, there is no direct causal link between the proxy statements for the re-election of board members and the loss caused by the elected board members' subsequent misconduct. Stated differently, the transaction authorized by the plaintiffs—the re-election of board members—is not the specific transaction that caused the alleged harm. *See Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) ("[Plaintiff] argues that . . . the proxy statements allowed the appellees to retain their positions on the board, thus ensuring that they could continue to mismanage the company. . . . [T]his is precisely the sort of claim that courts have repeatedly found insufficient to satisfy the transaction causation requirement. . . . [T]he mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss."); *In re The Home Depot, Inc. S'holder Derivative Litig.*, 223 F. Supp. 3d 1317, 1331 (N.D. Ga. 2016) ("Courts have . . . regularly dismissed Section 14(a) claims based on the election of directors because the losses are indirect.").

21

Other courts that distinguish between transaction causation and loss causation like the Seventh Circuit have reached the same conclusion. *See, e.g.*, *Rubenstein ex rel. Jefferies Fin. Grp. Inc. v. Adamany*, No. 22-2794, 2023 WL 6119810, at*4 (2d Cir. Sept. 19, 2023) ("[T]he 'tainted election' theory fails to allege sufficient facts to plead loss causation."); *Jaroslawicz v. M&T Bank Corp.*, No. 15-cv-897, 2026 WL 923086, at *25 (D. Del. Mar. 24, 2026) ("Courts have found that discretionary actions or management decisions taken by boards are not directly caused by the shareholder votes and proxies that elected them. . . . While the Plaintiffs' alleged economic losses might be tangentially *related* to the proxy solicitation, in that they resulted from a situation which the proxy solicitation discussed broadly, the Boards' . . . discretionary decisions became the *but for* cause of any alleged loss."); *McDowell v. Bracken*, 317 F. Supp. 3d 1162, 1181 (S.D. Fla. 2018) ("The reelection of the directors was not an essential link to the supposed losses that Plaintiff complains of: that is, the wast[ing] of corporate assets . . . was not accomplished or endorsed by any proxy solicitation materials." (citation modified) (alteration in original)).

The Court agrees with the great weight of persuasive authority that supports Defendants' position. *See In re Danaher Corp.*, 549 F. Supp. 3d at 74 (acknowledging that some cases supported the plaintiffs' position but finding the defendants' authority more persuasive). The Consolidated Complaint does not identify a proximate causal connection between the alleged misstatements in the Proxy Statements and the alleged loss caused by the Board's misconduct. Plaintiffs have therefore failed to adequately allege loss causation. Because the Consolidated Complaint fails to adequately allege loss causation, it fails to show a substantial likelihood of personal liability against the Defendants, and thus fails to show that a pre-suit demand would have been futile. Defendants' motion to dismiss Plaintiffs' Section 14(a) claims (Count I) is **granted**.

22

### 4. False or Misleading Proxy Statements

Defendants lastly argue that the Proxy Statements are simply not false or misleading (Filing No. 88 at 22; Filing No. 97 at 12–14). Because the Section 14(a) claims must be dismissed because the Consolidated Complaint fails to adequately plead loss causation, the Court need not and therefore does not reach the thornier issue of whether, when drawing all reasonable inferences in favor of Plaintiffs, the Proxy Statements contain false or misleading statements.

### 5. Leave to Amend

Plaintiffs request leave to amend their Consolidated Complaint to the extent any claims are subject to dismissal (Filing No. 94 at 37). Defendants do not expressly oppose this request but seek dismissal with prejudice. "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 & n. 3 (7th Cir. 2004); *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519, 520 (7th Cir. 2015) ("[A] plaintiff whose original complaint has been dismissed . . . should be given at least one opportunity to try to amend [his] complaint before the entire action is dismissed . . . [unless] amendment would be futile or otherwise unwarranted."). Although the Consolidated Complaint is the latest of three pleadings in this now-consolidated action, Plaintiffs have not yet had an opportunity to amend their complaint post-consolidation or with the benefit of the parties' dispositive motion briefing. The Court therefore dismisses Plaintiffs' Section 14(a) claims **without prejudice** and **grants** Plaintiffs' request for leave to amended.

### C.    Count II: State Law Breach of Fiduciary Duty Claims

Because Plaintiffs' federal claims are dismissed, albeit with leave to amend, the Court must address whether it is appropriate to continue to exercise supplemental jurisdiction over the remaining state law claims. The Court has discretion whether to exercise supplemental jurisdiction

23

over a plaintiff's state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

"Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Sharp Elecs. v. Metro. Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) (citation and quotation marks omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (internal quotation omitted). The Court finds that none of the exceptions applies to Plaintiffs' state law claims, and the Court sees no reason to deviate from the "usual practice" of relinquishing supplemental jurisdiction over state law claims. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

First, Plaintiffs are not prevented from refiling their claims in state court by the statute of limitations, because it is tolled while the case is pending in federal court. *See* 28 U.S.C. § 1367(d); *see also Artis v. Dist. of Columbia*, 583 U.S. 71, 74–75 (2018).

Second, the Court does not believe that relinquishment of jurisdiction will result in a substantial duplication of effort. Even though the earliest consolidated case was filed

24

approximately twenty-eight months ago, the Consolidated Complaint was filed only eight months ago, and the Court has not expended significant resources on the state law claims. The Court has not ruled on any other substantive or dispositive motions, and no Case Management Plan has been entered. *See RWL Mgmt. Co., Inc. v. BP Prods. of N. Am., Inc.*, 672 F.3d 476, 480–81 (7th Cir. 2012) (affirming district court order relinquishing supplemental jurisdiction even though case had been pending in federal court for over fifteen months, and district court had "held 35 hearings, considered 70 motions, and issued 45 orders," one of which was substantive). Further, any discovery the parties have already completed can be duplicated in state court with relative ease.

Third, it is not absolutely clear how the pendent breach of fiduciary duty claims should be decided. Defendants argue that the Consolidated Complaint fails to establish pre-suit demand futility because: at any given time, a majority of the Board did not face a substantial likelihood of personal liability; and, for several reasons, the breach of fiduciary duty claims fail on their merits and thus cannot create a substantial likelihood of personal liability. Defendants' arguments are varied, fact-intensive, and vigorously disputed by both sides. It is not entirely clear whether any, all, or some of these arguments is fatal to Plaintiffs' state law claims.

And lastly, as always, comity favors allowing state courts to decide issues of state law. The remaining breach claims are quintessential state law claims between a prominent Indiana corporation and its shareholders, based on important questions of Indiana common law and statutory law. These state law issues are best resolved by state courts. This consideration weighs strongly in favor of remand. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law . . . ."); *Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir. 1993) (holding a district court abused its discretion by retaining jurisdiction over a case where state law was unsettled; "Nor have

we found any other extraordinary circumstances which would lead us to believe that the retention of jurisdiction was necessary in this instance. To the contrary, we can identify one very good reason why the district should not have reached the merits of plaintiffs' commonlaw misrepresentation claims . . . the unsettled nature of Wisconsin law in the area of justifiable reliance."). In other words, the questions at issue are not the type of "no brainers" that would compel the Court to retain jurisdiction. *See Martin v. Ind. State Police*, 537 F.Supp.2d 974, 989 (S.D. Ind. 2008) (stating that unless remaining state claims are "no brainers," the "court's duty of comity toward Indiana courts in developing Indiana law directs the court to remand all state law claims to the state courts").

Based on the application of the *Carnegie-Mellon* factors, coupled with the presumption of relinquishment, the Court **intends to relinquish supplemental jurisdiction** over Plaintiffs' state law claims. If Plaintiffs amend their complaint, and Defendants again move to dismiss, and the motion to dismiss the federal claims is denied, then the Court will address the state law claims. If Plaintiffs do not amend their complaint, or if a second motion to dismiss is granted, then the Court will relinquish jurisdiction over the state law claims.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss (Filing No. 87) as to Plaintiffs' federal claims in Count I, which are **dismissed without prejudice** and the Court intends to **relinquish** jurisdiction over Plaintiffs' state law claims in Count II. Plaintiffs are granted leave of **thirty (30) days** from the date of this Order to file an amended complaint, if such filing would not be futile. If Plaintiffs do not file an amended complaint, then

the dismissal of Count I will be converted to a dismissal with prejudice, Count II will be dismissed without prejudice for lack of subject matter jurisdiction,[7] and final judgment will issue.

    **SO ORDERED**.

Date:    5/26/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Michael Bongiorno
Wilmer Cutler Pickering Hale and Dorr LLP
michael.bongiorno@wilmerhale.com

Mary Ellen Conner
Johnson Fistel, LLP
maryellenc@johnsonfistel.com

Jessica N. Djilani
Wilmer Cutler Pickering Hale and Dorr LLP
250 Greenwich Street
New York, NY 10007

Jessica Naima Djilani
Wilmer Cutler Pickering Hale and Dorr LLP
jessica.djilani@wilmerhale.com

James M. Ficaro
The Weiser Law Firm, P.C.
jmf@weiserlawfirm.com

Michael I. Fistel, Jr
Johnson Fistel, LLP
michaelf@johnsonfistel.com

Scott D. Gilchrist
COHEN & MALAD LLP
sgilchrist@cohenandmalad.com

---

[7] A dismissal for lack of subject matter jurisdiction is not a decision on the merits and thus is without prejudice. *See Kowalski v. Boliker*, 893 F.3d 987, 994 (7th Cir. 2018) ("[A] dismissal for want of subject-matter jurisdiction is necessarily without prejudice").

27

Erik Luedeke
Robbins Geller Rudman & Dowd LLP
eluedeke@rgrdlaw.com

Amy Miller
Cohen Milstein Sellers & Toll PLLC
amiller@cohenmilstein.com

Timothy Perla
Wilmer Cutler Pickering Hale and Dorr LLP
timothy.perla@wilmerhale.com

Julie Reiser
Cohen Milstein Sellers & Toll PLLC
jreiser@cohenmilstein.com

Elizabeth Christina Schiciano
Cohen Milstein Sellers & Toll PLLC
cschiciano@cohenmilstein.com

Ripley Shiarella
Wilmer Cutler Pickering Hale and Dorr LLP
ripley.shiarella@wilmerhale.com

Lion Wintemute
Robbins Geller Rudman & Dowd LLP
lwintemute@rgrdlaw.com

Paul A. Wolfla
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
paul.wolfla@faegredrinker.com